Thank you, Your Honor. Good morning. Good morning, Judge Nelson. Good morning. May it please the Court, if I could reserve two minutes for my rebuttal, please. My name is Robert Yen. I'm an attorney with the law firm of Yen Pilch, Tomadina & Fleming in Phoenix, Arizona. And I'm here today on behalf of Kevin Clark, the appellant in this matter. It's obvious from the earlier arguments the Court is very well prepared on the cases on this docket, and I'm not going to belabor the Court with the facts. But I think it is very important that the Court see in very clear terms what the chronology of events was in this case, because it was a very short period of time in which these things happened. Kevin Clark was a commander with the Town of Buckeye. He was also the president and founder of a local lodge of the Fraternal Order of Police, which included among its members, members of the Buckeye Police Department. And in February of 2004, the FOP Lodge endorsed a challenger to the incumbent for the office of mayor. That election was to be held just a few months later in May. So February 2004, they endorse their candidate. They go out, they campaign. They are not in uniform. They are not on their own time. They're in FOP casual clothes on the street. The incumbent mayor is the young man. Apparently, there's some dispute about that. Their version of the evidence, of course, is that that was just as you described it. Yes, Your Honor. There are some allegations that some of the officers were dropping off papers or picking up papers while they were out. But they weren't campaigning overtly while they were on city time. So February 2004, they endorse. The incumbent mayor is very unhappy, to say the least. He's actually enraged, and he is spreading his rage throughout town government. He's talking to council members. He's talking to city manager. He's talking to department heads. And in fact, he talks in February of 2004 to the fire chief, who had nothing to do with Kevin Clark's employment. And he says to the fire chief, if I am reelected, I will see to it that Kevin Clark never works another day in the town of Buckeye. He also complains to the chief of police about Kevin Clark's conduct and about these other officers' conduct. And he calls the chief of police on 20 occasions between February and May, complaining about what the FOP is doing, campaigning for his opponent. On 12 of those phone calls, he specifically complained about Kevin Clark in very derogatory and vulgar terms, terms I don't think are necessary to repeat here. So that's all between February and May this is happening. In May, the election is held. In fact, on May 18th, the incumbent mayor is reelected by a narrow margin of 41 votes. And soon after, within days after that election, town government changes dramatically. The town manager resigns from office. The fire chief resigns from office. The police chief resigns from office. In fact, the police chief's last day in office was June 27th, 2004. So the election is on May 18th. The chief resigns, effective June 27th. And within four days after the chief's final day in office, the interim transitional management team in the police department serves Kevin Clark with a notice of investigation. There are no factual allegations made against him in this notice. Nothing. Unspecified misconduct. It just says misconduct. So he's now under investigation. And they listed several policies and regulations and rules. Your Honor, I'm trying to recall. I don't believe they did in that notice. Now, they did in the notice of intent to terminate. But I don't believe they said that in the notice of investigation. I could be wrong about that. So they in on I guess it was either July 29 or August 4th, when they give him the notice of formal statement, they list policy number 235, conduct on becoming a peace officer, policy number 406, rules and regulations covering conduct. So they do provide Correct, Your Honor. And I think that was in connection with the interviews that they did of him. Well, that was part of so they gave him the notice and they said you're going to have to we're going to take your statement and here's why. Correct. Because we're investigating. Correct. And over the five-month or four-month investigation period, they interviewed him twice and they did tell him this is what we're investigating, where there are some allegations that you did this and this and this and this, a number of different things they informed him of. They asked him questions. This wasn't a hearing. This was an interrogation, an administrative interview. They asked him questions. And after the investigation concluded on November 5th, so four months later after it started, November 5th, the town issues Kevin Clark a notice of intent to terminate. And it says conduct on becoming an officer, dereliction of duty, whatever. There were a number of things. I think there were four things. There were four. Correct. It did not say, as it easily could have said, as most notices in most departments do, we believe you crashed a car into a light pole and therefore are guilty of abusing policy numbers such and such of the County of Maricopa. It could have said that. It didn't say that. It just said these policies, four policies. Kevin Clark, through his counsel, then requested orally a copy of two things. They requested a copy of the investigative report so that they could know what the charges were against him, what the factual allegations were against him that supported this termination. And we requested a pre-termination hearing pursuant to the United States Constitution and as enunciated in Cleveland Board of Education v. Loudermill in 1985. The town ignored it. The town didn't respond. They could have simply said, well, look, we think you misused city property. You used a copy machine. But they didn't do that. Now, this Loudermill hearing, as I understand, should be kind of an informal situation. That is absolutely correct. It's not an evidentiary hearing of anything. It's just a chance to say, I don't think you should terminate me because, based on what we know, it doesn't merit termination    And I'm not going to say that this is a discipline, or no discipline, or some lesser form of discipline. That is absolutely correct, Your Honor. That's really all it is, correct? That is all it is. It is an informal proceeding, a check against what they are about to do. And the Supreme Court said it's important because what the employee is about to lose is something very significant. What the court said in Loudermill is this. Well, let me back up a little bit and finish the facts on this. So we have this notice of termination. We ask for a copy of the investigative report. We ask for a statement of charges. We ask for a pre-termination hearing, informal as it may be. They ignore us. The district court said you essentially got this informal hearing through the investigative process. Pardon me? As I understand it, the district court essentially said that your client got this informal Loudermill hearing, essentially the equivalent of it, through the investigative process. That's correct, Your Honor. That's exactly what the district court said. What's wrong with that? Well, I think what's wrong with it is Loudermill requires a notice of two things. Loudermill says that due process provides to an employee, a public employee, who is not at will and who may only be terminated for cause. Loudermill says they're entitled to due process. And due process, according to the court, was two things. Of course, they're entitled to a post-termination hearing, but they're also entitled to the pre-termination hearing. And with regard to the pre-termination hearing, the court said some opportunity for the employee to present his side of the case is recurringly of obvious value in reaching an accurate decision. Dismissals for cause will often involve factual disputes. Even where the facts are clear, the appropriateness or necessity of the discharge may not be. In such cases, the only meaningful opportunity to invoke the discretion of the decision-maker is likely to be before the termination takes effect. So it's a twofold analysis, even in the pre-termination proceedings. What I'm going to read is not at all inconsistent with what you just said, but it And I'm not in any way contradicting this. I think it's a distillation. The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. Correct. Of those three things, what, in your view, did he not get? Well, I think the other part of Loudermill is that he's entitled to know what the proposed disciplinary action is. So that he may respond to the propriety of the termination. So it's two things, Your Honor. It's notice of the charges, it's an explanation of the evidence, and it's an opportunity to respond to the discipline. Because, as the Loudermill court said, even if the facts are clear, the appropriateness or necessity of the discharge may not be. Where do you get that? The reason I'm focusing on this is, this seems to me the test. I mean, after all the discussion is finished, that's the test. Tenured public employee is entitled to oral or written notice of charges against him, explanation of the employer's evidence, opportunity to present his side of the story. And the next sentence, the court says, to require more than this prior to termination would intrude to an unwarranted extent. So where do you find, and I'm not saying it's not true, but where do you find he's entitled to know more than what's right there? I find his entitlement to know the nature of the discipline in the language that I've quoted. And there are a couple of other. Notice of the charges against him. No. Notice of the intended discipline. They're going to terminate him. They're going to fire him. Correct. Correct. So he doesn't really learn that he's going to be fired until November 5th. That's correct, Your Honor. November 5th. At that point, they say, we're firing you, and here's the reason why we're firing you, 1, 2, 3, 4. That is exactly right, Your Honor. And so that's the moment where Loudermill is triggered. Now the employee knows two things. He knows what the charges are against him. Our position, of course, is he doesn't have an explanation of the evidence against him. And the town disputes that. But we're saying November 5th is the first day. That triggers it. And in almost every other agency, what they do is say, you're now entitled to a Loudermill hearing. Do you want to come in? Do you want to waive it? Do you want to send us something? Your time is running out. So you challenged the post-termination hearing, claiming that he didn't get enough He was excluded from presenting evidence, I guess, of his Retaliatory motive. Right. Retaliatory motive. Correct. Passing over that for a minute, when you get to district court, you do mount a First Amendment challenge. Correct, Your Honor. Is that correct? Correct. Okay. What's wrong with the district court's ruling? Well, the district court's ruling doesn't even address whether Kevin Clark violated the policy. The district court makes a pretty conclusory decision that the town has a constitutional right to adopt reasonable limitations on employee speech. And, Your Honor, for the sake of argument, we agree with that. A town may adopt reasonable limitations on an employee's speech. In this case, and then the district court says, and because Kevin Clark was campaigning, he violated it. So he wasn't speaking out or engaging in a protective activity. Counsel, you said he had to know that he was going to be fired in advance. Well, he was placed on disciplinary administrative leave, and he told the investigator that he removed personal belongings from his office the night before he was placed on leave because, quote, the writing was on the wall, and, quote, he knew they were going to fire him, suspend, or do something to him. He brought his lawyer to the interviews. The government made the point that he knew he was going to be fired. He had no idea? No, I think any employee who's put under investigation and goes on administrative suspension probably realizes something may happen. But what that is is unknown, completely unknown, because the range of discipline for law enforcement officers varies anywhere from oral reprimands to written reprimands to five-day suspensions, 30-day suspensions, demotions. It could be a number of different things. And so Sergeant Clark doesn't have any idea what's going to happen to him. Now, he says it could be the writing's on the wall, I could be fired or something or suspended or something, but he doesn't know. And under Loudermill, he's entitled to have notice from the town. In fact, the town's own policy says that they will give an employee such notice, that they will give the employee a letter stating what the charges are and the discipline. And they never did that. They never did that. So... He did get a letter alleging allegations of misconduct, did he not? Your Honor, it cites to the policies. The letter cites to the policies. But that's it. And I don't know how an employee can know. I think there's a very big difference between being asked questions in an investigation and then knowing what the charges are, the factual allegations against you are that support an intended discipline. So if they ask him about ten different matters, and then they say, okay, we think that's enough. We're going to terminate you for conduct unbecoming. How would he know which of those things he was investigated for could possibly be used against him? And I want to get back to Judge Piazza's question, too. I think you were... Judge, you might have to remind me what your question was. I think it had to do with the... I can't remember. I just know your time is just about up. I'm sorry. Let's do this. Let's hear from the other side, and we'll give you a chance to respond. And you might, in the meantime, have a chance to remember Judge Piazza's question, or perhaps Judge Piazza will remember. I do remember. Okay. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. My name is Richard Cohen. I'm here on behalf of the Town of Buckeye. As a starting point, because it really does give context to all of the issues that Appellant has raised, the core facts in this case are that three lower-level police officers, two male officers and a female officer named Marina Dominguez, went to the acting police chief and told him that the second-highest-ranking police officer in this small town in Arizona was abusing employees, was abusing his position as president of the association. It's not a union. It's an association. And had employees forced to join and to do things that were not part of their job duties. Let's just take that. And they initiate, they give him a statement of charges or a statement, whatever, a formal statement, I guess that's what it was called. And they say, there are allegations that you've engaged in misconduct. They list that. And they then add supplement later on with additional allegations, correct? Well, initially, it's minimal notice. Right. They give him allegations. They say, you know, looks like discipline action might be in order here. We need to investigate. Yes. Now, we're all to assume that that's taken in good faith, correct? Absolutely. They haven't made any decision yet they're going to fire him, correct? Absolutely. They want to investigate this to get the facts. And they did the investigation. They did the investigation. They talked to all these people, the 12 people, they talked to him twice. And when you say they, Your Honor, I would submit they did the investigation in probably what is the best way that a county could do it. They hired somebody from outside. Actually not hired. They requested the Arizona Department of Public Safety, the State Agency, to come in and do a completely independent investigation. He comes in, he does this investigation, records all the notes and everything, does a report on findings with each charge. Right. Correct? And he presents that with, I don't know who actually received that. It was the acting chief. Somebody received it. And about a month later the chief says, Okay, looks like four of the original allegations are substantiated. So, and they, those allegations that are substantiated warrant termination. Right? Appear to warrant, except it was ultimately the city manager who made that decision. Well, whoever made that decision. Yes. So they take the report, I gather, these findings. Yes, Your Honor. Look at the original allegations and they say, Okay, all this report supports, of the original allegations it only supports four. And those four are serious enough in our judgment that it warrants firing. Correct? Yes, Your Honor. All right. So why isn't that point when you give him the notice on November 5th and he says, Hey, I'd like to talk to somebody about your decision to fire me now that I know what the, based on these four allegations. And I, by the way, I'd like to see, you know, what the evidence is that you're looking at. I'd like to see that. Why doesn't he, under Loudermill, get something? Well, two responses, Your Honor. To begin with, when he was interviewed twice, he was given specifically, and there's no dispute about that, these are the charges against you we're investigating and here's what people have said. Here's the evidence. And this is your chance to give your side of the story. If we had called in an independent human resources manager, it would be absolutely fine and here it was fine. It's an investigation administrative on behalf of the city. So he has given his side of the story on each specific point that he's been charged. We know that the chief, whoever made this decision, didn't rely on all of those charges. Correct, Your Honor, but he has already. And he hadn't been told yet that he was going to be fired, had he? No, Your Honor. Which is primarily what the argument is because there's no question that he has been told the charges, the evidence, and given his chance twice to give his side of the story. And in terms of not being told you're going to be fired, we would point the court to several cases in our brief which say that is not necessary under the circumstances. For pre-termination especially, you'd have to look at the entire factual context. This is a commander who has been placed on administrative leave for months. He has seen the DPS come in to investigate and he knows what they're investigating. To suggest that he doesn't understand the seriousness and the potential consequences, which could include termination, is simply taking a point, a clause from Loudermill out of context and that's been rejected by the courts. But the judge has not made any decision one way or another about whether or not he should be fired. Correct? They made that decision. No, I mean the investigator, the guy, the fellow that was going around interviewing people. No, he's just the fact investigator. He's just the fact investigator. Which is what human resources or anyone else would do. And you want to assume that he's acting in good faith and everybody's acting in good faith. Correct? Well, there's no evidence to the contrary, Your Honor. And prior to, prior to I'm saying that Mr. Clark should assume that he's going to be fired. I'm saying that Mr. Clark If he approaches this investigation, we know what's happening. We know what's coming. I'm saying that Mr. Clark should recognize, certainly, that when he gives answers to the questions, he ought to recognize that he may well be fired for these types of charges. Doesn't that ensure he's going to be fired? And he doesn't have to be, Your Honor. He doesn't have to be. The test here always comes down to the three points that Judge Fletcher mentioned. I mean, are you being given notice of those charges? Are we really going to say that a commander who's put on leave and being interviewed by the DPS with those charges is going to not give all information he could because he doesn't realize it's a serious matter? In Pinozzo, Your Honor, the Seventh Circuit decision at page 16 of our brief, the Court said, and this was a police officer who was terminated based on repeated failures to show up for court appearances. And the Court, the challenge was, well, when you gave him his notice of termination, potential termination, not the termination, but notice of intent to terminate, you only cited rules. And the Court, but you didn't tell him, here's exactly what you did. And the Court said, wait a minute, here are the facts. We're dealing with a police officer. He knew what he was being investigated for. Just giving rules is enough. He has to take the whole picture into account. In Copeland, cited at page 15, the Third Circuit dealt with a due process challenge, pre-termination, officer accused of using illegal drugs. And the Court said, this is a police officer. As soon as they said, you're coming in for a second year analysis test, he understood what the problem was and he understood how serious it could be. It's not actual words. It's are you, does this person have a recognition that this is a serious matter? So if it were the city librarian, you'd make a different argument. You wouldn't be as, you'd be a little bit more sympathetic. Well, I would say that based on the allegations against him by his officers, it's far more serious when you're in a little town. You can't transfer him with a strong warning somewhere else. And the things he was accused of, I would say he would be terminated in San Francisco or New York or anywhere else. Actually, I want to move you beyond this, unless, I have some questions just about So we get to the post-termination hearing. Yes, Your Honor. And I gather he wanted to raise a defense that he was being singled out for his campaigning activities. Retaliation. He wanted to put in evidence that the mayor, what you heard today, that the mayor has been screaming angry at him. And actually what he was angry about was he believed he was violating the rules and he was electioneering, campaigning on duty. Right. The mayor, not the manager who made the decision. Well, that's a whole different question. That gets into causation and whatnot, but that's not. But I'm just saying he wanted to raise a defense, correct? He wanted to put on more witnesses. The defense was raised. He kept telling to the hearing officer. He testified. The former police chief testified. Was it retaliatory defense, retaliation defense proper? Only if you could, the only issue for the hearing officer is was there a good cause to terminate. So hearing officer couldn't consider retaliation? I think you can consider retaliation for the hearing officer to decide that the decision maker really didn't make his decision for that. Or maybe that somebody was tainted, one of the witnesses, if you said he's been out to get me. Is your position that under the city's policy against electioneering activities, is it your position that in light of that policy he couldn't even raise a retaliation defense? No, I think he could. I think the hearing officer got it precisely right. One of the exercises of discretion beyond that, he got it precisely right. You have to connect dots as any trial judge. And by the way, this is not evidence that might have swayed a jury. He's hearing what the evidence was going to be that they were going to put on. He just said it won't matter to me. It's not relevant. So I don't think you can ask that question, Your Honor, in a vacuum. I think if we just change the facts slightly, this is what the hearing officer is looking at. Three officers come and say, we've got a commander who is making racist comments to employees, and he's making racist comments to suspects. And it's investigated, and numerous officers say, hey, I've heard him. He does it. He does it routinely. And then that goes up to three commanders who are now running the police department, all of whom have been in the FOP, two of whom were supporting the same candidate, and they say, we're looking at the findings. He has been harassing people based on race. Recommendation goes up, HR, and city manager says, has to be terminated on this record. Now he comes in and he says, the mayor has been out to get me for a long time. And the hearing officer, I think as any fact finder, looks at this and says, they're putting on overwhelming evidence that officers who have not been out to get you say you're harassing people based on race. This has been investigated. It's been confirmed and reconfirmed and reconfirmed. It has gone up not to the mayor, but a panel of three high-ranking officers who say, unacceptable in our department. What relevance in that fact situation where there's no connecting of dots to the people who made the recommendation? So when does he ever get to raise his First Amendment defense? Well, he gets to raise the First Amendment defense in court. In federal court? In federal court. Okay. So he gets to all, so finally he gets to federal court and he says, ah, the real reason why you fired me, despite all those other reasons, but the real reason you did it was because I was out there campaigning. As a complete claim. As I said, you can try to present evidence in certain personnel hearings of retaliation if it impacts the core issue before that hearing officer, was there a good cause. Here there's overwhelming evidence of good cause and whatever the mayor was saying or ranting and raving, it wouldn't matter. I'm now in federal court. And there were two issues that were presented to trial court. They did this because I'm a member of the FOP. The trial court looked at the evidence, starting with plaintiff in his deposition said, if I would have been the same person but supporting the other candidate, none of this would have happened. Well, it's not his relationship to the FOP. It's who you were supporting by his own admission. On top of that, the people who testified against him were members of the FOP. On top of that, the people who made the recommendations were members of the FOP. The HR director had made the same recommendation. No evidence that she had any ax to grind. No evidence that the decision maker ever had a problem with the FOP. No evidence that anything changed after he was terminated. The trial court looks at all of this and says, you've given me a conclusory allegation. Your own evidence is to the contrary. So now we get to the second part of the First Amendment, which is not freedom of association, but his speech. And this is where the court granted our motion on one argument. And we believe the court easily could have granted it on both in that this court, if it disagrees with what the trial court did, could easily find in this record basis to say that there's no basis for trial in this case. What the trial court said was the courts have upheld a government's right to have reasonable restrictions on what its employees can do in terms of political activities. There was no dispute about that below. There also was no suggestion to the court that there's a fact dispute as to whether he really violated the policy or not. The trial court said that, and we've argued that. The dispute was, as in the briefs, you didn't do a balancing test, which misunderstands the law. You don't do a balancing test until you find, first, that the employee is engaged in protected activity. And the second was just a statement that it's unconstitutional to unreasonably restrict somebody's First Amendment rights. As the court said, no argument, no case law as to why this did. We all know if it's too restrictive, it's unconstitutional. But here, by his own admission and by the other evidence in this case, the commander did not simply express a personal opinion. They seemed to feel that as long as you do things off-duty, you're constitutionally protected. And that is not what the Supreme Court has said in Hatch Act cases, and it's not what other courts have said in municipality or state cases. Okay. But they don't seem to make a challenge to the regulation. Yes, Your Honor. So it was simply a matter, by his own admission, he was saying, yes, I was actively campaigning and I was getting others to, but we weren't on duty. Okay. And the court said it doesn't matter. Okay. Thank you. Thank you. Would you like, we'll give you two minutes and then we're done. Thank you, Your Honor. I appreciate that. Very quickly. Okay. First off, the town of Buckeye is not a little town. In the year that we're talking about, the town of Buckeye was one of the fastest-growing cities in America. Right now, it's ground central for foreclosures, but it was a big town. This is not a little place. Secondly, the city's election policy against electioneering said this. It said that employees are prohibited from engaging in political activity relating to any town election beyond the private expression of personal opinion, meaning off-duty, out-of-uniform personal expression. And that policy, prior to the general election, was clarified by the town. And when the town said employees could participate in local politics, specifically the election, but not using town equipment or on town time. So there's certainly a question of fact whether Kevin Clark violated this town's policy because he had a specific right to engage in local politics and specifically the election. Third, Your Honor, the town raises a point, or Judge Pius raised the point, didn't the town have to proceed with this investigation in good faith? They had an open mind. And the town's attorney says, yes, of course. But that's not what the evidence shows. In the record is the testimony from the chief of police, wherein he says, I talked to the new town manager after the old town manager resigned following the election on May 18th. When did you talk to him? I talked to him about two days after he took office. I talked to him at city hall. And what did he say? He said a lot of things. The words, this is the chief's quote, the words specifically were, quote, according to some of your staff, referring to the police department, Clark is the wedge. I've talked with some council people and the mayor, and they feel that Clark is the wedge here that's caused all the problems bringing the FOP and splitting this department into two. That's the town manager. That's the person who made the decision. Okay. And so the question, he goes on to say something has to be done. And the question is, is this what he was talking about, the termination of Kevin Clark? Okay. Thank you, Your Honors. I appreciate your involvement. Thank you both for your helpful arguments. The case of Clark v. Town of Buckeye is now submitted for decision.
judges: Nelson D. W., Fletcher W. , Paez